NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

CASE NUMBER _____

**FAYETTE CIRCUIT COURT**
**DIVISION _____**

*Electronically Filed*

**ROBIN DAVIS**                                                      **PLAINTIFF**

**v.**

**KENTUCKY COMMUNITY AND TECHNICAL**
**COLLEGE SYSTEM**
**d/b/a**
**BLUEGRASS COMMUNITY AND TECHNICAL**
**COLLEGE**                                                          **DEFENDANT**

SERVE:        TIMOTHY BURCHAM
              REGISTERED AGENT
              300 NORTH MAIN STREET
              VERSAILLES, KENTUCKY 40383

*JURY TRIAL DEMANDED*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**VERIFIED COMPLAINT**</u>

Comes the Plaintiff, Robin Davis and, for her Complaint against the Defendant, Kentucky Community Technical College System, doing business as Bluegrass Community and Technical College, states as follows:

<u>**THE PARTIES**</u>

1.    Plaintiff, Professor Robin Davis, is a resident of London, Laurel County, Kentucky. At all relevant times, Ms. Davis was a qualified individual with a disability within the meaning of the Kentucky Civil Rights Act and the Americans with Disabilities Act.

2.    Kentucky Community and Technical College System ("KCTCS") is a non-profit corporation providing post-secondary education to students in the Commonwealth of

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000001 of 000021

Kentucky. KCTCS's education system is made up of over seventy campuses state-wide, and it employs more than a thousand workers in the Commonwealth. Its principal office is located at 300 North Main Street, Versailles, Kentucky 40383. Timothy Burcham serves as KCTCS's registered agent for service of process.

3.  Ms. Davis has been, from 2000 until the date of this Complaint, a teacher of statistics for the KCTCS system and/or its predecessor, situated at the Bluegrass Community and Technical College campuses in Kentucky and online. All of the parties' transactions, acts, and omissions described herein took place in Lexington, Fayette County, Kentucky.

## JURISDICTION AND VENUE

4.  Ms. Davis's causes of action are brought pursuant to the Kentucky Civil Rights Act, KRS Chapter 344, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, and as amended in the Americans with Disabilities Act Amendments Act of 2008, the Family and Medical Leave Act, and Kentucky Wages and Hours Act, KRS Chapter 337.

5.  Jurisdiction is proper in the Fayette Circuit Court pursuant to KRS 23A.010(1), KRS 344.450, and 29 U.S.C. § 2617.

6.  Venue in this action is proper in the Fayette Circuit Court pursuant to KRS 452.450 and KRS 452.460(1), because, *inter alia*, Plaintiff was employed by Defendant from its Lexington campus and the injury arising from these events was done to the Plaintiff from Fayette County, Kentucky.

7.  All required administrative remedies have been exhausted. In August of 2016, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging the violations set forth herein. On June 1, 2017, the EEOC issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit A.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000002 of 000021

2

Filed   17-CI-02877   08/08/2017   Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

8.    At all times material to this action, Ms. Davis was an "employee" as defined by KRS
Chapter 344 and 42 U.S.C. § 12111(4), and KCTCS was an "employer" as defined in KRS
Chapter 344, 42 U.S.C. § 12111(5), and 29 C.F.R. § 825.104.

## FACTS

9.    Ms. Davis is an individual with disabilities, Panic Disorder and Anxiety Disorder,
sometimes collectively referred to as "Panic and Anxiety Disorder" or "Anxiety and Panic
Disorder."

10.   According to the National Institute of Mental Health, Panic Disorder afflicts 2.7% of the
American adult population, with 44.8% of those individuals (1.2% of all American adults)
experiencing severe symptoms.  Treatments are available, but there is no known cure.

11.   The National Institute of Mental Health reports that 18.1% of the American adult
population suffers from Anxiety Disorder, with 22.8% of those people (4.1% of all
American adults) experiencing severe symptoms.  As with Panic Disorder, treatments are
available, but there is no known cure for Anxiety Disorder.

12.   Ms. Davis manages her mental disabilities with professional treatment and ameliorative
therapies, and this treatment regimen is managed by professionals qualified to do so.

13.   Ms. Davis's disabilities interfere with her ability to perform her job duties during her flare-
up episodes, which usually express as severe panic attacks.  During these attacks, Ms.
Davis is at risk for hyperventilation, loss of consciousness, and bodily injuries from falls
or collisions with surfaces or items.

14.   In August of 2000, KCTCS's predecessor hired Ms. Davis to serve as a statistics instructor
for its BCTC students in the Mathematics and Statistics Division.  Ms. Davis taught
students in the fall and spring semesters, as well as in the summer "overload" sessions.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000003 of 000021

3

Filed      17-CI-02877      08/08/2017      Vincent Riggs, Fayette Circuit Clerk      NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

15. At the time of her initial hiring, Ms. Davis's experience of her disabilities was not severe. She was able to manage the symptoms and navigate flare-up episodes with relatively few complications.

16. In August of 2004, Ms. Davis pursued online instruction for the Mathematics and Statistics Division. She completed an online application, which was approved, and she thereafter led the Division in the development of an online curriculum and education delivery method.

17. In 2009, Ms. Davis was diagnosed with breast cancer, a disability that required aggressive treatments and surgeries, beginning in May of 2009 and lasting until December of 2010. During this time, KCTCS gave Ms. Davis a full teaching schedule of exclusively online classes. Ms. Davis completed all of her assigned job duties to the college's satisfaction.

18. Between August of 2011 and May of 2014, Ms. Davis completed a full professor promotion cycle. By this time, Ms. Davis had returned to teaching some in-person classes.

19. Ms. Davis's Panic and Anxiety Disorder symptoms had begun to increase in severity in the time since her cancer diagnosis, and her return to in-person teaching was fraught with new challenges.

20. Ms. Davis attempted to continue her in-person classes, as scheduled, despite the growing complications of her disabilities.

21. By 2013, Ms. Davis's medical care providers identified Ms. Davis's flare-up episodes as "major panic attacks," and they prescribed medication to alleviate the symptoms.

22. At work, Ms. Davis notified the Mathematics and Statistics Division Manager, fearing that her classes would have to be cancelled due to the sudden onset, unpredictable panic attacks.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000004 of 000021

Filed      17-CI-02877      08/08/2017      Vincent Riggs, Fayette Circuit Clerk

Filed          17-CI-02877    08/08/2017          Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
                                                                     08/21/2017 03:18:43 PM
                                                                          03270-6

23.   The Division Manager worked with Ms. Davis to create online courses so that the students would not experience cancellation of their classes.  This solution permitted Ms. Davis to continue teaching the courses, without suffering a loss in instruction time or quality, and it permitted the students to receive their bargained-for education.

24.   With this accommodation, Ms. Davis provided office hours and advising for her students online.

25.   Ms. Davis was not required to use her Family and Medical Leave Act leave entitlement for this accommodation.

26.   All essential functions of Ms. Davis's job were satisfied with this accommodation.

27.   No student was refunded tuition money or denied any portion of credit for the courses as a result of the transition to online classes.

28.   In 2014, Ms. Davis continued to succeed at her job with the online teaching accommodation.  The college continued to schedule her for a full course load, which included four online summer session classes.

29.   At some point during this period, BCTC began to promote its online course offerings on its promotional materials to appeal to non-traditional/commuter students: "BCTC offers daytime, evening and weekend classes at six convenient campus locations. ***Classes are also offered*** in Georgetown-Scott County, downtown Lexington and ***online***."  *See* Bluegrass Community and Technical College "About" page, https://bluegrass.kctcs.edu/About/, site last visited Aug. 8. 2017.

30.   The school also promised prospective students that its online offerings would "permit students to earn credentials without having to visit a traditional, bricks and mortar

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000005 of 000021

Filed          17-CI-02877    08/08/2017          Vincent Riggs, Fayette Circuit Clerk

Filed 17-CI-02877 08/08/2017 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

classroom." *See* Bluegrass Community and Technical College "Online BCTC Programs"

page, https://bluegrass.kctcs.edu/About/, site last visited Aug. 8. 2017.

31.    Also throughout this period, the college had, for years, experimented with a pilot online

program. Under that program, another BCTC teacher had been teaching exclusively online

for several years.

32.    Ms. Davis is informed and believes that the college did not consider the pilot program

teacher disabled, nor did that teacher require FMLA certification to participate in the fully

online instruction program.

33.    In December of 2014, Ms. Davis submitted a request to teach exclusively online. At that

time, her teaching duties were largely online, but still included two courses on campus in

the fall and spring semesters, with the four summer session classes still completely online.

34.    The Dean of Academics denied Ms. Davis's request.

35.    At that time, Ms. Davis was aware of her medical peril if she did not receive her

accommodation. Due to the nature of her episodes, she was at risk of personal injury if she

had an attack while in public, and unattended by a family member familiar with her

conditions. On a college campus, she would also be vulnerable to criminal actions of

others, including sexual assault, as the worst of her episodes leave her completely

incapacitated.

36.    Ms. Davis obtained FMLA paperwork substantiating her need to be physically absent from

campus due to her disabilities.

37.    The college accepted the certified FMLA paperwork for the fall semester of 2015, and Ms.

Davis's entitlement was applied to her in-person classes, office hours, and proctoring time.

38.    That semester, Ms. Davis still kept office hours online for her distance learning students.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000006 of 000021

Filed 17-CI-02877 08/08/2017 Vincent Riggs, Fayette Circuit Clerk

Filed 17-CI-02877 08/08/2017 Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

39. For the spring of 2016 semester, the same accommodation/application of FMLA was used.

40. That spring, however, it occurred to Ms. Davis and BCTC that the chronic and ongoing nature of her disabilities required a more permanent accommodation, and one that would not require her to use her FMLA leave accommodation. Unprompted, the Human Resources Department of the BCTC Lexington campus suggested an Americans With Disabilities Act ("ADA") accommodation.

41. Ms. Davis completed ADA accommodation paperwork and submitted it to Human Resources Department at the college, expecting that the interactive process would begin with the goal of finding an ongoing reasonable accommodation for Ms. Davis's disabilities.

42. In February of 2016, Ms. Davis attended a meeting to discuss her accommodation request. The meeting was supposed to involve Ms. Davis's confidential medical issues, and it was supposed to be between Human Resources and Ms. Davis.

43. Instead, Ms. Davis arrived at the meeting to find the Dean of Academics and the Dean of Institutional Effectiveness in attendance – people to whom Ms. Davis had not authorized disclosure of her information.

44. Ms. Davis was required to discuss her disabilities with these unauthorized KCTCS personnel. Thereafter, the college would disseminate Ms. Davis's confidential medical information to others, including those who had no job-related reason to receive the confidential information.

45. At that February 2016 meeting, the college's representatives refused to offer the online accommodation, offering instead to condense Ms. Davis's in-person duties to one or two days per week.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000007 of 000021

7

Filed        17-CI-02877        08/08/2017        Vincent Riggs, Fayette Circuit Clerk        NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

46.     The college's representatives also offered Ms. Davis a small "safe space" to which she
could retreat during flare-ups – a small isolated room where she could suffer her major
panic attacks alone.

47.     Ms. Davis did not accept this accommodation, and she explained that it did not address the
needs presented by her disabilities.

48.     As the spring semester waned, Ms. Davis was assigned her usual four-class summer session
workload for the upcoming summer session of 2016.  She continued to complete all of her
essential job functions for these online classes through Skype, email, and telephonic
communications.

49.     In August of 2016, Ms. Davis submitted new FMLA paperwork to recertify for her
entitlement, expecting that the previous year's FMLA-leave-as-accommodation
arrangement would be similarly approved.

50.     The college did approve this leave arrangement, after receiving the new paperwork.

51.     The new paperwork contained a lengthy narrative by Ms. Davis's medical care provider,
including this statement:

> Based on the new diagnoses, increasing frequency, duration, and severity
> of Robin's symptoms, I make the following recommendation: 1) Official
> ADA accommodation approval for online completion of all job functions,
> without use of FMLA hours, to permit Robin to complete her job fully
> online without interruption of reduced time/pay, or 2) Use of FMLA hours
> for any job function/requirement that it is not physically possible to
> complete using online options. . . . It appears that online options are
> available, but have not been approved, for Robin to continue completing her
> job functions at a distance.  Robin is not physically able to be present on
> campus and I see a deterioration in her previous condition.

52.     There is no evidence that the college took heed of the medical care provider's
recommendation of disability accommodation conveyed in that paperwork.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000008 of 000021

8

Filed        17-CI-02877    08/08/2017        Vincent Riggs, Fayette Circuit NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

53.   The same paperwork clearly specified that "Job functions, requiring physical campus presence, such as teaching, office hours, etc., cannot be completed during episodes" and certified that it was "medically necessary" for Ms. Davis to be away from work during her flare-ups.

54.   The college accepted this FMLA paperwork, as it had in the prior year, and Ms. Davis continued to teach solely online, as well as to provide office hours and personal advising to students remotely.

55.   In August of 2016, Ms. Davis filed a Charge of Discrimination with the Louisville office of the Equal Employment Opportunity Commission, complaining of the college's refusal to provide her with an accommodation or to otherwise engage in the interactive process.

56.   In October of 2016, KCTCS offered Ms. Davis a demotion to the Lecturer position, which it claimed would require of her all of the job duties she was completing under her FMLA-leave-as-accommodation framework. The college conveyed that the demotion would come with a pay cut of several thousand dollars. This was the only accommodation that the college offered at that time.

57.   At that time, the college did not articulate an undue hardship preventing it from granting Ms. Davis fully online teaching status.

58.   The online teaching status that Ms. Davis was requesting at that time was the same fully online status that the pilot program instructor had received.

59.   Abruptly, the college terminated the online pilot program in the fall of 2016. By then, the pilot program's instructor had enjoyed about a decade of fully online teaching.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000009 of 000021

9

Case: 5:17-cv-00344-KKC Doc #: 1-2 Filed: 08/21/17 Page: 10 of 21 - Page ID#: 15

60. Ms. Davis is informed and believes that during the decade of the pilot program, KCTCS represented to its online students that they were receiving quality education through online instruction.

61. Termination of the pilot program did not mean termination of all online instruction. As of the date of this Complaint, BCTC continues to offer several programs that are comprised of *all* online classes. *See* Bluegrass Community and Technical College "Online BCTC Programs" page, https://bluegrass.kctcs.edu/About/, site last visited Aug. 8. 2017.

62. As the 2017 spring semester approached, Ms. Davis was approved for the application of her FMLA leave to the spring's courses. Again, she undertook to teach all online classes, and she completed those classes' office hours and advising duties remotely.

63. Ms. Davis's Charge in the EEOC continued to develop during the spring of 2017.

64. Mid-semester, the summer session catalog was released, and Ms. Davis learned that she was being denied the chance to teach her ordinary load of summer classes.

65. Ms. Davis inquired, and the college's representative told her that she could not teach summer classes because she could not be on campus "to proctor."

66. The "proctoring" job duty can be covered by any other KCTCS employee, and there is even an online program that allows remote proctoring. The college refused to consider these options.

67. In previous summers, Ms. Davis had been permitted to teach fully online, and to use her FMLA entitlement to cover the proctoring function. In summer of 2017, as her EEOC Charge pended, she was tersely denied this option.

68. Summer session instruction entitles teachers to additional pay, above the fall/spring semester pay that they typically earn. Thus, summer session instruction was an opportunity

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000010 of 000021

Case: 5:17-cv-00344-KKC   Doc #: 1-2   Filed: 08/21/17   Page: 11 of 21 - Page ID#: 16

for Ms. Davis to earn additional pay, and it was denied to her after she filed her EEOC Charge.

69.   Summer session classes benefit the college by allowing it to fill classes – and bill students – outside of the ordinary fall/spring semesters.  The college makes significant revenues off of these classes.

70.   For the same 2017 summer session, the college informed Ms. Davis that her FMLA use in the spring semester had kept her from teaching the minimum number of courses that the college required of its professors.  To retroactively "earn" her prior semester's pay, Ms. Davis would be required to teach a summer session class, online, *for no additional pay*. Ms. Davis was not warned of this penalty in advance of the spring semester, and it was presented to her just before the summer session was scheduled to commence.

71.   Ms. Davis taught in the summer session of 2017 without receiving the ordinary, agreed-upon pay for her efforts that she had always received before.

72.   Ms. Davis protested the college's refusal to pay her for her efforts, as well as its refusal to provide her the ordinary course load for summer.

73.   The EEOC issued Ms. Davis's Notice of Right to Sue on June 1, 2017.  *See* Exhibit A.

74.   Soon thereafter, KCTCS informed Ms. Davis that she would not be permitted online teaching as any form of accommodation, even FMLA, for the coming fall semester.

75.   The college issued a notice of its intent to terminate Ms. Davis if she did not report to campus *and* teach in-person classes in the fall of 2017.

76.   Ms. Davis submitted her recertification paperwork for FMLA leave in the summer of 2017, on the ordinary schedule for certification, and the college responded that it would not approve the years-old arrangement of permitting FMLA leave for in-person duties.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000011 of 000021

Filed        17-CI-02877    08/08/2017        Vincent Riggs, Fayette Circuit NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

77.   Ms. Davis has been threatened with immediate suspension without pay, intended to culminate in termination, in the immediate aftermath of her exercise of her rights under the ADA, the Kentucky Civil Rights Act, the FMLA, and the Kentucky Wages and Hours Act.

78.   In the meantime, Ms. Davis is aware that her particular medical issues and records have been discussed, disclosed, and distributed, without her authorization, throughout the college's administration.

79.   There is no reason to believe that this employer will respect the federal and state laws dealing with disability and medical leave unless required to do so by this Court.

80.   As of the date of this Complaint, Plaintiff has not been paid for teaching the summer session for 2017, and she has been given no reason to believe that the college intends to compensate her.

81.   KCTCS inflicts hardship on its disabled employees in violation of the Kentucky Civil Rights Act and the Americans with Disabilities Act, refusing to consider online teaching as an accommodation for disabilities.

82.   KCTCS further refuses to accept certifications as required by the FMLA that would provide employees access to their leave entitlements.

83.   Absent the intervention of this Court, Ms. Davis and other disabled KCTC employees will continue to suffer oppressive and illegal treatment from this employer.

## I. DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE

84.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

85.   Plaintiff's claims against the Defendant arise under the Kentucky Civil Rights Act, Kentucky Revised Statutes Chapter 344, *et seq.* ("KCRA") and the Americans with

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000012 of 000021

12

Filed        17-CI-02877   08/08/2017        Vincent Riggs, Fayette Circuit Clerk NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and relate to her employment by the Defendant.

86. The Defendant is an employer within the meaning of the KCRA and the ADA.

87. The Plaintiff is a qualified individual with a disability within the meaning of the KCRA and the ADA.

88. As described above, the Defendant has repeatedly and willfully failed to provide the Plaintiff with reasonable accommodations to her disability – or to even engage in the interactive process required for the determinations of reasonable accommodations.

89. Defendant has never articulated an undue hardship that it believes it will suffer as a result of making reasonable accommodations.

90. Defendant has promoted its online instruction to students without any representation that online instruction is of lesser quality than in-person instruction, with the intention that these prospective students would rely on its representations. Those students did rely on KCTCS's representations of the quality of its online courses. KCTCS is therefore estopped from claiming that lesser quality of online programs is a substantive, undue hardship.

91. Defendant has admitted that it ceased the interactive process after Plaintiff filed her EEOC complaint, and this refusal to participate in the crucial interactive process violates the prevailing law of disability accommodation.

92. Defendant's conduct violated the KCRA's and the ADA's requirements that employers provide reasonable accommodations to their disabled employees.

93. During the relevant period, Defendant permitted non-disabled employees to teach classes online, to include variations from classic in-person requirements, without penalizing those employees' pay or job statuses.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000013 of 000021

Filed        17-CI-02877   08/08/2017        Vincent Riggs, Fayette Circuit Clerk

Filed          17-CI-02877     08/08/2017     Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

94.  Defendant facilitated, permitted, or caused the disclosure of Plaintiff's confidential medical information, in violation of the ADA, 42 U.S.C. § 12112.

95.  Defendant subjected Plaintiff to an illegal medical inquiry by requiring her to answer questions about her disabilities in meetings with non-Human Resources personnel.

96.  Defendant discriminated against Plaintiff on the basis of her disability, in violation of the KCRA and the ADA.

97.  All required administrative remedies have been exhausted.

98.  As a direct and proximate cause of the Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, emotional stress, and mental anxiety, for all of which she should be compensated.

99.  Plaintiff is entitled to all relief, legal and equitable, available under the KCRA and the ADA.

## II.  FAMILY AND MEDICAL LEAVE ACT VIOLATIONS

100.  Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

101.  The FMLA prohibits qualifying employers from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under th[e] [FMLA]." 29 U.S.C. § 2615(a)(1).

102.  Under the FMLA, employers are required to consider an employee's rights under all applicable statutes, and to apply the law that affords the employee the most rights. *See* 29 C.F.R. § 825.702.

103.  The FMLA also forbids changing the itemization of a position's essential job functions to thwart an employee's request for leave. *See* 29 C.F.R. § 825.702.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000014 of 000021

14

Filed          17-CI-02877     08/08/2017     Vincent Riggs, Fayette Circuit Clerk     NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

104. The FMLA further requires that an employer accept sufficient paperwork and award medical leave, or else discuss any and all perceived deficiencies in the paperwork with the affected employee.

105. Employers are estopped from accepting FMLA paperwork as sufficient, and then later refusing the same substantive paperwork for a similarly qualified employee.

106. The Defendant refused to accept the sufficient paperwork of Plaintiff and to award medical leave in a manner consistent with prior years.

107. The Defendant refused to discuss any perceived deficiencies in the paperwork with Plaintiff.

108. The Defendant changed the essential job functions, aware of Plaintiff's limitations, to avoid recertifying Plaintiff for FMLA leave in 2017.

109. The Defendant required Plaintiff to use her FMLA leave in years past, without applying the ADA or the KCRA, each of which afforded Plaintiff greater protection.

110. Defendant has interfered with Plaintiff's use of her FMLA leave, in violation of the Act.

111. Defendant has refused to restore Plaintiff to her prior employment after she took her FMLA leave.

112. Defendant counted Plaintiff's use of FMLA time as missed work eligible for penalty – and thereafter required Plaintiff to work without pay to "make up" the time, effectively interfering with Plaintiff's free enjoyment of her FMLA rights.

113. Pursuant to 29 U.S.C. § 2617(a)(1), Plaintiff is entitled to recover compensatory damages, liquidated damages, and any such equitable relief, including reinstatement, promotion, and injunctive relief, as the Court deems appropriate.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000015 of 000021

Filed          17-CI-02877     08/08/2017          Vincent Riggs, Fayette Circuit Clerk

Case: 5:17-cv-00344-KKC   Doc #: 1-2   Filed: 08/21/17   Page: 16 of 21 - Page ID#: 21

## III.  VIOLATION OF KENTUCKY WAGES AND HOURS ACT

114.   Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

115.   Under Kentucky wage law, Plaintiff was entitled to the agreed-upon salary for each week or work unit in which she performed work and no exceptions applied.  *See* KRS § 337.060.

116.   The Defendant pays its instructors/professors additional compensation for teaching summer sessions, above what these employees expect to make during the ordinary school year.

117.   In 2017, Defendant required Plaintiff to teach the summer session, but it refused to pay her for her work.

118.   As a consequence of the illegal withholding of pay, Plaintiff was made to suffer financial hardship.

119.   Plaintiff is entitled to compensation for the improperly withheld pay, along with an equal amount as statutory liquidated damages, and her costs and attorneys' fees incurred herein. *See* KRS § 337.385.

## IV.  RETALIATION

120.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

121.    Plaintiff's claims against the Defendant arise under the Kentucky Wages and Hours Act, the FMLA, the Kentucky Civil Rights Act, and the ADA.

122.   Plaintiff engaged in protected activity under the KWHA, the FMLA, the KCRA and the ADA by making complaints to the Defendant, including complaints about its failure to accommodate her disability, its requirement that she make up time, and its refusal to pay her appropriately.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000016 of 000021

Filed 17-CI-02877 08/08/2017 Vincent Riggs, Fayette Circuit Clerk **NOT ORIGINAL DOCUMENT**
08/21/2017 03:18:43 PM
03270-6

Case: 5:17-cv-00344-KKC Doc #: 1-2 Filed: 08/21/17 Page: 17 of 21 - Page ID#: 22

123. Plaintiff was subjected to adverse actions by the Defendant because she engaged in activity protected under the state and federal laws.

124.  A reasonable employee in Plaintiff's position would have found the Defendant's actions materially adverse.

125. There exists a causal connection between the Defendant's materially adverse actions toward Plaintiff and her protected activity.

126. The Defendant's conduct violated the KCRA's anti-retaliation provision, as well as the ADA's anti-retaliation provision. *See* KRS 344.280; 42 U.S.C. § 12203.

127. The Defendant's conduct violated the FMLA's anti-retaliation provision. *See* 29 U.S.C. § 2615.

128. The Defendant's conduct violated the KWHA's anti-retaliation provision.  *See* KRS 337.990.

129. As a direct and proximate result of the Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, emotional stress, and mental anxiety, for all of which she should be compensated.

130. Plaintiff is entitled to all relief, legal and equitable, available under the KWHA, the FMLA, the KCRA, and the ADA.  This relief shall include compensatory damages, liquidated damages as applicable, attorneys' fees and costs, and punitive damages as applicable, as well as any appropriate injunctive relief.

## INJUNCTIVE RELIEF

131. Plaintiff incorporates all preceding paragraphs as if set forth fully herein.

132. Defendant has threatened to force Plaintiff to appear at campus, in person, on pain of termination, in the near future.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000017 of 000021

Filed          17-CI-02877   08/08/2017          Vincent Riggs, Fayette Circuit Clerk          NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

133.   Defendant's threats are designed to create a fear of impending peril to Plaintiff, as Defendant is aware that this will exacerbate her medical distress.

134.   Plaintiff is at risk of immediate, irreparable harm as a direct result of Defendant's actions.

135.   Plaintiff is entitled to injunctive relief from this Court, requiring Defendant to immediately cease its calculated threats, to follow the Family and Medical Leave Act's proscriptions on Defendant's conduct, and to engage in the interactive process for the purpose of complying with the Americans With Disabilities Act and the Kentucky Civil Rights Act.

136.   Plaintiff is further entitled to injunctive relief in the form of full reinstatement, applicable promotion, grant of Plaintiff's distance learning request, restoration of benefits, and any and all other equitable relief to which Plaintiff may be adjudged entitled.

## PUNITIVE DAMAGES

137.   Plaintiff incorporates all preceding as if fully set forth fully herein.

138.   Defendant has engaged in a pattern of conduct in the Commonwealth of Kentucky that regularly oppresses the Commonwealth's disabled employees.

139.   Defendant has developed a policy of singling out disabled employees for disparate treatment.

140.   Absent the deterrent effect of punitive damages, Defendant will continue to subject Kentucky workers to illegal retaliation and discrimination.

141.   Defendant's actions were intentional, willful, and malicious.  These actions were carried out with flagrant indifference to Plaintiff's rights, were effected with an awareness that the conduct would result in physical and emotional injury, and were specifically intended to subject Plaintiff to cruel and unjust hardship.

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000018 of 000021

18

142. Defendant authorized or ratified the fraudulent, oppressive, and malicious conduct of its agents, or it should have anticipated their fraudulent, oppressive, and malicious conduct.

143. As a result, Defendant's conduct justifies a judgment of punitive damages, as permitted by applicable law and due process, in an amount to be determined by a jury.

Wherefore, Plaintiff respectfully demands:

1. Judgment against Defendant;

2. Compensatory and liquidated damages as authorized by the Kentucky Civil Rights Act, KRS Chapter 344, the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, the Family and Medical Leave Act, and the Kentucky Wages and Hours Act, KRS Chapter 337;

3. Equitable relief to which she appears entitled, including reinstatement, promotion, restoration and grant of entitlements, and any other appropriate injunctive relief;

4. Punitive damages;

5. Trial by jury;

6. Pre- and post-judgment interest on her judgment as recoverable under the law;

7. Her costs and attorneys' fees as recoverable under the law;

8. Leave to amend this Complaint as the law and orders of the Court permit; and

9. Any and all other relief to which she may appear entitled.

Filed 17-CI-02877 08/08/2017 Vincent Riggs, Fayette Circuit Clerk

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000019 of 000021

Filed          17-CI-02877   08/08/2017   Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

Respectfully submitted,

Robyn Smith
Abney & McCarty, PLLC
2950 Breckenridge Lane
Suite 13
Louisville, Kentucky  40220
Telephone:  (502) 459-4108
Facsimile:  (502) 459-4277
Email: robyn@amkylaw.com
*Counsel for Plaintiff*

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000020 of 000021

Filed          17-CI-02877   08/08/2017   Vincent Riggs, Fayette Circuit Clerk

Filed          17-CI-02877        08/08/2017        Vincent Riggs, Fayette Circuit Clerk   NOT ORIGINAL DOCUMENT
08/21/2017 03:18:43 PM
03270-6

## VERIFICATION

I have read the foregoing statements and they are true and accurate to the best of my knowledge and belief.

_____

ROBIN DAVIS

COMMONWEALTH OF KENTUCKY        )
                                )ss
COUNTY OF JEFFERSON             )

Subscribed and sworn to before me by Robin Davis this 8th day of August, 2017.

_____

Notary Public

State at Large, Kentucky
My commission expires: _11-30-2018_

21

Presiding Judge: HON. KIMBERLY BUNNELL (622203)

COM : 000021 of 000021